Case 1:20-cv-00118 Document 1   Filed 01/07/20   Page 1 of 9 PageID #: 1

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JAN 07 2020 ★
BROOKLYN OFFICE

CV20-118

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x

EMELL OWENS,

                 Plaintiff

-against-

CENTENE CORPORATION,

                 Defendant

--------------------------------------------------x

GLASSER, J.

**COMPLAINT**
**JURY DEMAND**

MANN. M.J.

## I. NATURE OF ACTION

1. This action involves discrimination in employment on the basis of perceived marital status and/or perceived partnership status, in violation New York City Administrative Code § 8-107 *et. seq.* ("New York City Human Rights Law"). In September 2019 defendant Centene Corporation discharged plaintiff Emell Owens from her position as Director of Provider Relations because it perceived that she had a marital and/or partnership relationship with a co-worker. Because it perceived that plaintiff had a marital and/or partnership relationship with a co-worker defendant refused to enforce its anti-harassment policy. Instead it aided and abetted plaintiff's co-workers in subjecting her to an abusive and hostile work environment on the basis of her protected status. This wrongful conduct included cooperating with one or more of plaintiff's co-workers to access photographs of one of her children from the internet. New York Human Rights Law makes it an unlawful discriminatory practice to discharge an employee or otherwise discriminate against

him or her in the terms or privileges of employment on the basis of actual or perceived marital and/or partnership status.

## II. JURISDICTION AND VENUE

2. Subject matter jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Plaintiff is a natural person domiciled in the State of New York and a citizen of the State of New York, and defendant is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri. The amount in controversy in this matter exceeds, exclusive of interests and costs, $75,000.00.

3. The court has personal jurisdiction over defendant in that defendant regularly provides healthcare and insurance services in the State of New York through its ownership and control of New York-based insurance companies and managed-care organizations. This Court also has personal jurisdiction over defendant in that the cause of action arises from acts committed by defendant while transacting business in the State of New York.

4. Venue is proper in this district under 28 U.S.C. 1391(b)(2) because all of the events or omissions giving rise to plaintiff's claim occurred in this district.

### III. THE PARTIES

5. Plaintiff Emell Owens ("Ms. Owens") is a natural person, domiciled in the State of New York. She is a citizen of the United States.

6. Defendant Centene Corporation is a publicly traded foreign corporation based in Missouri, which is primarily engaged in providing managed-care health services to the general public.

### IV. STATEMENT OF CLAIM

7. Ms. Owens was hired as a Director of Provider Relations in Fidelis Care's Rego Park, New York location in March 2017.

8. Fidelis Care is a New York-based health insurance company.

9. As a Director of Provider Relations Ms. Owens had overall supervisory responsibility for nineteen employees, which included Supervisors, Provider Specialists, Team Assistants and Provider Quality Specialists.

10. In or about July 2018, Fidelis Care was acquired by Centene Corporation ("Centene"). Upon information and belief, the acquisition of Fidel Care by Centene resulted in all Fidelis Care employees becoming employees of Centene.

11. While working at Fidelis Care and Centene Ms. Owens consistently received satisfactory performance evaluations.

12. While employed at Centene Ms. Owens was subjected to a hostile work environment and disparate treatment with respect to the terms and privileges of employment on account of her perceived marital and/or partnership status.

13. On or about February 28, 2019, after attending a staff meeting Ms. Owens began receiving threatening text messages from a subordinate, Supervisor Ava

Brewster. In one of these messages Mr. Brewster stated, " I have your number" "You [*sic*] game is up."

14. Shocked by Ms. Brewster's unprovoked behavior and fearing for her personal safety, Ms. Owens, in accordance with Centene's anti-harassment policy, reported Ms. Brewster's conduct to Centene Human Resources Manager Melanie Horner. Ms. Owens made it clear to Ms. Horner that she felt that her personal safety was threatened by Ms. Brewster's conduct and that she wanted the Human Resources department to intervene.

15. The code of conduct set forth in Centene Employee Handbook explicitly prohibits verbal threats between co-workers. It also prohibits harassment on the basis of "any legally protected classification,...including marital status or domestic partnership status."

16. Shortly after Ms. Owens filed the harassment complaint against Ms. Brewster, Melanie Horner contacted Ms. Owens and told her that in response to her complaint Ms. Brewster reported to her that Ms. Owens was either married to or in a partnership relationship with Provider Specialist II James Johnson.

17. In or about 2001, Ms. Owens was in a relationship with James Johnson. The relationship produced a son. Neither Ms. Owens nor Mr. Johnson worked for Centene or Fidelis Care at the time.

18. After having a child together in 2001, Ms. Owens and Mr. Johnson never married or continued their relationship.

4

19. Ms. Owens went on to raise her son on her own. She and Mr. Johnson have not been in a relationship with each other since the birth of their son.

20. Mr. Johnson was hired by Centene Corporation as a Provider Specialist II in December 2018.

21. Mr. Johnson applied for a position with Centene on his own. Ms. Owens took no part in Centene's decision to hire him.

22. As a Provider Specialist II Mr. Johnson had no direct reporting relationship with Ms. Owens.

23. Ms. Owens was not responsible for evaluating Mr. Johnson's work.

24. Ms. Owens was not responsible for setting Mr. Johnson's salary.

25. Centene has a nepotism policy that is set forth in its employee handbook.

26. Centene's nepotism policy applies to "relatives or persons who share the same household."

27. Centene nepotism policy specifically defines the term "relatives" as spouse, child, sibling , girlfriend, boyfriend, grandchild, parent grandparent, aunt, uncle, niece, nephew fiancé, step parent, sibling-in-law, legal guardian, former spouse, or any person living in the household of the employee.

28. Insofar as Ms. Owens was not married to James Johnson, did not live in the same household with him, had not been in a relationship with him for over 18 years, and did not supervise his work, she was not in violation of Centene's nepotism policy.

29. After Ms. Owens filed her harassment complaint, Centene took no disciplinary action against Ms. Brewster. Human Resources manager Melanie Horner elected instead to begin investigating whether Ms. Owens was married to or in a partnership relationship with James Johnson.

30. In September 2019, Ms. Owens counseled Provider Partnership Associate Ziegler Moore after Ms. Owens learned that Ms. Ziegler-Moor had arrived late to a Provider Partnership meeting in Glen Cove and was unprepared for the meeting.

31. In retaliation for having been counseled by Ms. Owens, Ms. Ziegler-Moore reported to Centene Human Resources department that Ms. Owens was married to James Johnson and/or had a child with him.

32. On or about September 6, 2019, Centene Human Resource manager Mary Malone called Ms. Owens to a meeting. At the meeting Ms. Malone told Ms. Owens that "an anonymous complaint" was filed against her. Ms. Malone then began questioning Ms. Owens about whether she was currently "in a relationship with one of her team members."

33. On or about September 6, 2019, Mary Malone called James Johnson to a meeting and questioned him about whether he was currently in a relationship with Ms. Owens and whether they had a child together.

34. Sometime in September 2019, acting in concert with T Ziegler Moore and other Centene employees, Centene's Human Resources department intensified its investigation into Ms. Owens' private life.

35. Sometime in September 2019, aided and abetted by T Ziegler Moore and other Centene employees, Centene Human Resources department accessed high school graduation photos of Ms. Owens' son from the internet.

36. On or about September 20, 2019, Centene Human Resources manager Brian Kuzmiak called James Johnson to a meeting. At the meeting Mr. Kuzmiak showed Mr. Johnson photos of Ms. Owens' son taken from the internet, and asked him whether it was his son. After Mr. Johnson admitted that the person in the photos was in fact his son, Mr. Kuzmiak summarily terminated his employment.

37. On or about September 20, 2019, Human Resource Manager Brian Kuzmiak called Ms. Owens to a meeting. At the meeting Mr. Kuzmiak questioned Ms. Owens as to whether she and Mr. Johnson had a son together.

38. After Ms. Owens admitted at the meeting with Mr. Kuzmiak that she had a son with Mr. Johnson, Mr. Kuzmiak summarily terminated her employment and directed that she be escorted from the building.

39. In summarily terminating Ms. Owens' employment on the basis of a perceived marital or partnership relationship with a co-worker, Centene illegally discriminated against her in violation of New York City Human Rights Law.

40. Centene subjected Ms. Owens to disparate treatment when it terminated her employment based on a perceived marital and/or partnership relationship with a co-worker but failed to take any disciplinary action against Ava Brewster, who threatened her with bodily harm and T Ziegler Moore, who subjected her to retaliation.

41. Centene did not terminate Ms. Owens' employment due to her performance.

42. Centene did not terminate Ms. Owens' employment on the basis of any proven favoritism shown toward James Johnson.

43. Centene terminated Ms. Owens' employment solely on the basis of a perceived marital and/or partnership relationship with James Johnson.

## V. PLAINTIFF'S CLAIM FOR RELIEF

44. The matters set forth in paragraph 1 through 43 are hereby repeated.

45. Defendant subjected Ms. Owens to disparate treatment in the terms and privileges of her employment on the basis of a perceived marital and/or partnership relationship in violation of New York City Human Rights Law.

46. Defendant's termination of Ms. Owens' employment on the basis of a perceived marital and/or partnership relationship is violative of New York City Human Rights Law.

47. Defendant's nepotism policy as it is applied to Ms. Owens' circumstances is violative of New York City Human Rights Law.

48. As a consequence of defendant's wrongful conduct in violation of New York City Human Rights Law, plaintiff is entitled to back pay and front pay in an amount to be determined at trial, plus damages for extreme emotional distress in the amount of $3,000,000.00.

49. Insofar as defendant's discriminatory conduct as described above was wanton and in reckless disregard for plaintiff's rights, she is entitled to punitive damages against defendant in the amount of $5,000,000.00.

## VI. JURY DEMAND

50. Plaintiff demands that all issues in this action be tried before a jury.

WHEREFORE, Plaintiff demands judgment against defendant for back pay and front pay in an amount to be determined at trial, plus $3,000,000.00, representing emotional distress damages, together with $5.000,000.00 in punitive damages, together with an order directing that plaintiff be reinstated to her position, along with reasonable attorney fees, costs and disbursement, and such other further relief the court deems just and proper.

Dated: Brooklyn, New York
        December 12, 2019

ROOSEVELT SEYMOUR
*Attorney for Plaintiff*
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
(718) 802-0055
Bar Code: RT0915