UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
**EMELL OWENS,**

                                **Plaintiff,**                      **MEMORANDUM
AND ORDER**

    -against-

                                                                **20-CV-118 (EK)**

**CENTENE CORPORATION and
CENTENE MANAGEMENT COMPANY, LLC,**

                                **Defendants.**
----------------------------------------------------------------x

       By letter-motion filed on November 23, 2020 – approximately one week before the court-ordered deadline for fact discovery in this employment discrimination action – plaintiff Emell Owens ("plaintiff") sought permission to file a second amended complaint, in order to add a claim under the Stored Communications Act (the "SCA"), 18 U.S.C. § 2701 *et seq*. See Motion to Amend/Correct/Supplement (Nov. 23, 2020) ("11/23/20 Pl. Motion"), Electronic Case Filing Docket Entry ("DE") #33; Proposed Second Amended Complaint (Nov. 23, 2020) ("Prop. Sec. Am. Compl."), DE #33-1. Defendants Centene Corporation and Centene Management Company, LLC ("defendants") oppose the request, on the ground that the "proposed amendment is futile, the product of undue delay and bad faith and would result in prejudice to Defendant." Opposition To Plaintiff's Request To File Second Amended Complaint (Nov. 30, 2020) ("11/30/20 Def. Opp.") at 1, DE #34. For the following reasons, this Court denies plaintiff's motion.[1]

---

[1] Increasingly, courts in this Circuit have treated motions to amend as non-dispositive pre-trial motions. See Jhagroo v. Brown, 1:16-cv-03426 (MKV) (SDA), 2020 WL 3472424, at *2 & n.1 (S.D.N.Y. June 25, 2020) (denying motion for leave to amend on futility grounds in an Opinion and Order); United States for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co., 15-CV-4961 (LTS) (JLC), 2020 WL 2530180, at *1 & n.1 (S.D.N.Y. May 19, 2020) (same); Xie v. JP Morgan Chase Short-Term Disability Plan, 15 Civ. 4546 (LGS),

## BACKGROUND

On January 7, 2020, plaintiff commenced this action, charging defendant Centene Corporation with discriminating against her on the basis of perceived marital status and/or perceived partnership status, in violation New York City Administrative Code § 8-107 *et seq*. See Complaint (Jan. 7, 2020) ("Compl."), DE #1.  In the original Complaint, plaintiff alleges that defendant Centene Corporation terminated her employment because it believed that she had a marital and/or partnership relationship with a co-worker, James Johnson.  See id. ¶¶ 1, 38.  Plaintiff alleges, *inter alia*, that, "aided and abetted by T[.] Ziegler Moore and other Centene employees, [the] Centene Human Resources department accessed high school graduation photos of Ms. Owens' son from the internet."  Id. ¶ 35; see id. ¶ 1 (alleging that defendant's conduct included "cooperating with one or more of plaintiff's co-workers to access photographs of one of her children from the internet").[2]  Based on those photos, Centene Corporation determined that plaintiff and Mr. Johnson shared a child together and terminated her employment.  See id. ¶¶ 36-38.

At the initial conference held in this matter on April 3, 2020, the Court set a May 29, 2020 deadline for amendments to the pleadings.  See Minute Entry (Apr. 3, 2020), DE #10. On May 27, 2020, plaintiff amended her complaint to add as a defendant Centene Management

---

2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018) (treating magistrate judge's recommendation to deny motion to amend on futility grounds as "nondispositive matter" and applying "clearly erroneous" standard); DiPilato v. 7-Eleven, Inc., 662 F.Supp.2d 333, 341 (S.D.N.Y. 2009).  Here, the Court's memorandum and order denying plaintiff's motion rests primarily on timeliness grounds.  To the extent the Court's decision is deemed "dispositive" for purposes of Rule 72(b) of the Federal Rules of Civil Procedure, it is respectfully recommended that the motion be denied.

[2] Plaintiff's pleadings and submissions include inconsistent spellings of Ms. Ziegler Moore's name; this opinion adopts the spelling used in the original Complaint and in most of defendants' submissions.

2

Company, LLC, but did not change the underlying factual allegations or claim contained in the original complaint. See, e.g., Amended Complaint (May 27, 2020) ¶¶ 37-40, DE #12. At the settlement conference conducted by this Court on July 20, 2020, while contending that defendants had "collaborated" and "cooperated" in the unauthorized access of plaintiff's private Facebook account, plaintiff did not raise the issue of adding an SCA claim. On September 18, 2020, plaintiff moved for and obtained an extension of time to complete discovery, through December 2, 2020, but did not request an extension of the expired deadline for amending the pleadings. See Motion for Disclosure (Sept. 18, 2020), DE #25; Order (Sept. 18, 2020).

Plaintiff seeks to justify her delay in moving to add the proposed SCA claim, contending that "she did not have sufficient evidence to support the claim." 11/23/20 Pl. Motion at 1. Plaintiff claims that new evidence uncovered at the November 19, 2020 deposition of Brian Kuzmiak, defendants' Director of Human Resources, excuses her late request. See id. According to plaintiff, Mr. Kuzmiak "testified at his deposition that in September 2019 he directed a subordinate in the HR department to access Ms. Owens' private Facebook account in order to obtain evidence of her relationship with a coworker." Id. Defendants object to plaintiff's request on grounds of futility, timeliness and undue prejudice to defendants. See 11/30/20 Def. Opp.

## DISCUSSION

### I. Timeliness

Plaintiff's belated request to amend her pleading to add a new cause of action is devoid

of any discussion of the governing legal standard for assessing such a request. As defendants correctly note, where, as here, a court has set a scheduling order pursuant to Rule 16 of the Federal Rules of Civil Procedure ("FRCP"), the court must first address whether the party seeking to amend has shown "good cause" for modifying that scheduling order. See Fed. R. Civ. P. 16(b)(4); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 243-44 (2d Cir. 2007); accord Gullo v. City of N.Y., 540 F.App'x 45, 46-47 (2d Cir. 2013) (affirming denial of untimely motion to amend to name defendant officers). One purpose of Rule 16 is to "offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983)).

If the party seeking the amendment satisfies the "good cause" standard of Rule 16, the court then determines whether the movant has also met the liberal standards of Rule 15 of the FRCP. See Kassner, 496 F.3d at 244. Although Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), even under that liberal standard, leave to amend may be denied "for good reason, including futility, bad faith, undue delay or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

In this case, it is undisputed that, in accordance with Rule 16, the Court set a deadline of May 29, 2020 for the parties to amend their pleadings and/or add new parties. See 4/3/20 Minute Entry. Consequently, Rule 16 governs this dispute, and the Court need not decide whether plaintiff has satisfied the liberal standard of Rule 15(a) unless plaintiff first establishes

4

"good cause" under Rule 16 for amending her already amended pleading after the expiration of the court-ordered deadline. See Ahmed v. Astoria Bank, No. 14–CV–4595 (JBW), 2015 WL 4394072, at *2 (E.D.N.Y. July 16, 2015). The Court concludes that plaintiff has not.

Rule 16 allows a party to obtain a modification of a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). It is the movant's burden to establish good cause. See Parker, 204 F.3d at 340; Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co., No. 02 Civ. 1230(LMM), 2006 WL 2242596, at *3 (S.D.N.Y. Aug. 3, 2006). "Whether good cause exists turns on the diligence of the moving party." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and citations omitted). A party has not acted diligently where the proposed amendment to the pleading is based on information "that the party knew, or should have known," in advance of the deadline sought to be extended. See Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F.Supp.2d 453, 457 (S.D.N.Y. 2012) (quoting Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749 (KMW)(DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), aff'd, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009)). Although diligence is the primary focus of a "good cause" analysis, a court may, in its discretion, also consider other factors, such as whether "allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner, 496 F.3d at 244.

If the plaintiff was previously aware of the facts underlying her proposed claim, it is well established that she has not established "good cause" under Rule 16(b). See Parker, 204 F.3d at 340–41. Plaintiff herein provides no excuse for her inordinate delay, let alone "good

cause" under Rule 16.  See Cohen v. G & M Realty L.P., No. 13–CV–5612 (FB), 2015 WL 1182712, at *4 (E.D.N.Y. Mar. 13, 2015); The Apollo Theater Found., Inc. v. W. Int'l Syndication, No. 02 Civ.10037(DLC), 2005 WL 1041141, at *19 (S.D.N.Y. May 15, 2005) (rejecting, as "transparent," movant's good-cause arguments where proposed claim was based on information within plaintiff's control before initiation of the action); NAS Elecs., Inc. v. Transtech Elecs., PTE Ltd., 262 F.Supp.2d 134, 150 (S.D.N.Y. 2003) (finding no good cause for delay even though "the papers in support of the motion [for leave to amend] discuss details developed in discovery, [because] it is clear the essence of the plaintiffs' claim . . . [was] made in the original Complaint").

Plaintiff's proposed SCA claim asserts that defendants violated the statute by "accessing without permission the electronic communication stored in Plaintiff's Facebook account." Prop. Sec. Am. Compl. ¶ 56.  Plaintiff acknowledges that "[d]uring the early part of discovery defendants produced documents which tended to show that Centene's HR department had cooperated with one or more of Ms. Owens' subordinates to obtain information about her private life." 11/23/20 Pl. Motion at 2.  However, plaintiff contends that she only recently discovered, at Mr. Kuzmiak's deposition, that defendants "independently accessed" Ms. Owens' private Facebook postings.  See id. at 3.  Plaintiff further explains that prior to this disclosure, "[d]efendants maintained during discovery that the photos came from an anonymous source and that they had no role in accessing the documents from Ms. Owens' Facebook account."  See id. at 2.

Notwithstanding plaintiff's contentions, the record is clear that throughout this

6

litigation, plaintiff's theory of the case has remained the same -- that defendants accessed private postings from plaintiff's Facebook account to ascertain whether she had a familial relationship with a subordinate employee. It is disingenuous for plaintiff to assert that the basis for her proposed claim is that defendants "independently accessed" her private account. For example, in the original complaint, plaintiff alleged that, "aided and abetted by T[.] Ziegler Moore and other Centene employees, Centene Human Resources department accessed high school graduation photos of Ms. Owens' son from the internet." Compl. ¶ 35. The proposed pleading similarly alleges that, "aided and abetted by T[.] Z[ie]gler Moore[,] defendants' Human Resources department accessed photos of [plaintiff's] children and other private postings from her Facebook page." Prop. Sec. Am. Compl. ¶ 40. It is undisputed that defendants produced the subject Facebook postings during "the early part of discovery." 11/23/20 Pl. Motion at 2. Further, in his presentation at the July 20, 2020 settlement conference held before this magistrate judge, counsel for plaintiff vigorously argued that defendants "collaborated" and "cooperated" in the unauthorized access of plaintiff's private Facebook account. Here, all of the facts plaintiff has asserted in the proposed SCA claim were known to plaintiff and were essentially included in the original complaint.

Further, plaintiff has not pointed to any deposition testimony from Ms. Ziegler Moore or Mr. Kuzmiak that constitutes "direct evidence" that defendants "access[ed] her private Facebook account." 11/23/20 Pl. Motion at 2. To the contrary, Ms. Ziegler Moore testified unequivocally that the photographs from plaintiff's Facebook page, which it is undisputed Ziegler Moore sent anonymously to the Human Resources Department, were obtained only

7

through publicly available means. See 11/30/20 Def. Opp., Ex. A at 23-24, 54, DE #34-1. Although Mr. Kuzmiak testified that he directed Human Resources Manager Dewayne McQueen to verify that the postings were "valid," he did not testify that Mr. McQueen accessed plaintiff's *private* Facebook postings. See 11/30/20 Def. Opp., Ex. B at 68, 70, DE #34-2; DE #39-5 at 74-77 (attached to Motion to Amend/Correct/Supplement (Jan. 5, 2021), DE #39). In fact, plaintiff has not identified any newly obtained discovery that provides her with a good-faith basis for a claim that defendants unlawfully accessed her private Facebook account. In the absence of any recent discovery, plaintiff has failed to explain why she could not, with diligence, have asserted the SCA claim at a much earlier stage of the proceedings. In sum, plaintiff has not shown good cause to excuse her violation of the deadline for amending the pleadings.

**II.     Futility**

Even assuming, *arguendo*, that plaintiff could demonstrate "good cause," she nevertheless would have to show that the proposed amendment is permissible under FRCP 15. Pursuant to Rule 15, courts ordinarily should grant leave to amend in the absence of bad faith by the moving party, undue prejudice or futility. See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005); Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000); Manson v. Stacescu, 11 F.3d 1127, 1133 (2d Cir. 1993) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, plaintiff's motion to amend fails on futility grounds. Generally, on a motion to amend, the court accepts the factual allegations in the proposed amended complaint as true,

8

and does not consider any evidence except that which is included in or incorporated by reference in the amended complaint. See Nettis v. Levitt, 241 F.3d 186, 194 n.4 (2d Cir. 2001) ("Determinations of futility are made under the same standards that govern Rule 12(b)(6) motions to dismiss."); Seemann v. Coastal Envtl. Grp., Inc., 219 F.Supp.3d 362, 367 (E.D.N.Y. 2016); Cano v. DPNY, Inc., 287 F.R.D. 251, 257 (S.D.N.Y. 2012). However, where the court is asked to review a proposed amendment with the benefit of a full discovery record, a futility analysis will properly turn on the question of whether the proposed amended complaint would be subject to dismissal under Rule 56 of the FRCP, for failure to create a triable issue of material fact. See Milanese v. Rust–Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (noting that standard for assessing futility depends on stage of litigation at which motion to amend is brought); Summit Health, Inc. v. APS Healthcare Bethesda, Inc., 993 F.Supp.2d 379, 403-04 (S.D.N.Y. 2014), aff'd sub nom. APEX Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc., 725 F.App'x 4 (2d Cir. 2018); Huber v. Nat'l R.R. Passenger Corp., No. 10 Civ. 09348(ALC)(DF), 2012 WL 6082385, at *5 (S.D.N.Y. Dec. 4, 2012). Where, as here, the parties have submitted evidence beyond the pleadings and fact discovery has closed, it is appropriate to apply a summary judgment standard in assessing futility. See Summit Health, 993 F.Supp.2d at 403-04; DiPace v. Goord, 308 F.Supp.2d 274, 278–79 (S.D.N.Y. 2004) (applying a summary judgment standard where both parties submitted and relied on extensive extrinsic evidence in making their arguments, and where the moving party was not seeking additional discovery). As discussed below, under either standard, the proposed amendment is futile.

A. The SCA Claim Would Not Survive a Rule 12(b)(6) Motion to Dismiss

The SCA applies to anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system . . . ." 18 U.S.C. § 2701(a). Plaintiff's proposed amended complaint contains only bare factual allegations that "defendants' Human Resources department accessed photos of [plaintiff's] children and other private postings from her Facebook page." Prop. Sec. Am. Compl. ¶ 40. Plaintiff alleges that defendants violated the SCA "by accessing without permission the electronic communication stored in [p]laintiff's Facebook account." Id. ¶ 56. Her proposed claim thus fails by alleging in only conclusory terms a violation of the statute, i.e., that the defendants intentionally accessed, without authorization, or exceeded their authorization to access, plaintiff's Facebook posts. See Corley v. Vance, 365 F.Supp.3d 407, 450–51 (S.D.N.Y. 2019) (finding insufficient to survive a motion to dismiss plaintiff's "threadbare allegations . . . that the Government Defendants intercepted his communications 'through' the Corporate Defendants"), aff'd, 811 F.App'x 62 (2d Cir. 2020); Tantaros v. Fox News Network, LLC, 17 Civ. 2958 (GBD), 2018 WL 2731268, at *10 (S.D.N.Y. May 18, 2018) (plaintiff "offers *no* facts to plausibly suggest that Ailes, Shine, or anyone else employed by Fox News enlisted Snyder—or anyone else for that matter—to hack or otherwise illegally access *Plaintiff's* personal electronic devices"); Molefe v. Verizon New York, Inc., No. 14-

10

CV-1835-LTS-GWG, 2015 WL 1312262, at *3 (S.D.N.Y. Mar. 24, 2015) ("Plaintiff provides no factual basis regarding how or why Verizon transferred these files, nor does he explain the factual basis for his belief that Verizon performed any transfer that may have occurred."); Williams v. Rosenblatt Sec. Inc., 136 F.Supp.3d 593, 607 (S.D.N.Y. 2015) ("plaintiff's claim fails because it does not allege, other than in conclusory terms, that the defendants were without authorization, or exceeded their authorization to access his emails").

    B.  The SCA Claim Would Not Survive a Motion for Summary Judgment

  Even looking past the sparse allegations in the proposed pleading, and considering the extrinsic evidence submitted by the parties, plaintiff has failed to raise a genuine issue of material fact as to defendants' liability under the SCA. First, since it is undisputed that Ms. Ziegler Moore sent screenshots from plaintiff's Facebook account anonymously and unprompted by defendants, see Affidavit of Emell Owens (Jan. 5, 2021) ("Owens Aff.") ¶ 3, DE #39-1; 11/30/20 Def. Opp., Ex. A at 48; id., Ex. B at 65-66, there is no basis for plaintiff to impute Ms. Ziegler Moore's conduct to defendants. See Combier v. Portelos, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *13 (E.D.N.Y. July 5, 2018) (dismissing SCA claim against employer because, even assuming that complaint stated an SCA claim against employees, the complaint "contains no allegations that would implicate the [employer] in the purported SCA violation"), adopted, 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018), aff'd, 788 F.App'x 774 (2d Cir. 2019); Yukos Capital S.A.R.L. v. Feldman, No. 15-CV-4964 (LAK), 2016 WL 4940200, at *3 (S.D.N.Y. Sept. 14, 2016) (dismissing SCA counterclaim because defendant "has not sufficiently alleged an agency relationship between the third party

defendants and [computer forensics firm]").

Second, the only evidence on which plaintiff relies is her own affidavit, in which she avers that her Facebook postings have never been generally accessible to the public and she specifically identifies certain posts as "private." See Owens Aff. ¶¶ 9-11; see also id. ¶ 11 (claiming "I have not changed my privacy settings since opening my account"). Neither plaintiff nor her counsel specifically addresses the earlier proffer from defense counsel (albeit in an unsworn statement), who asserted that on November 19, 2020, the day that Mr. Kuzmiak was deposed, she Googled plaintiff's name and readily found her Facebook page and, importantly, that each photo produced in discovery was publicly accessible on plaintiff's Facebook page. See 11/30/20 Def. Opp. at 2 n.2. After defense counsel notified plaintiff's counsel that these postings were available to the public, plaintiff changed her Facebook privacy settings so that all of her posts are now restricted from public access. See id. At oral argument on this motion, defense counsel confirmed to the Court that she had been able to access the subject postings on November 19, 2020; significantly, as discussed below, defense counsel's claim is corroborated by one of the screenshots she submitted from her November 19, 2020 search, which contains a Facebook post that plaintiff swears is, and always has been, a "private posting[]." See 11/30/20 Def. Opp., Ex. C at ECF p. 6, DE #34-3; Owens Aff. ¶ 14 (discussing Bates-stamped D000078 and D000083).[3]

Plaintiff's self-serving claim that the subject Facebook posts were "private" is contrary

---

[3] Bates-stamped D000083 contains the same Facebook posting as D000078, but in D00083, the date, time and privacy setting for the post are cut off.

12

to documentary evidence proffered by her.  See Owens Aff. ¶¶ 7, 14, 15.  Even a cursory examination of the Facebook posts identified by plaintiff as "private" refutes her claim that they were not publicly available.  Consistent with defense counsel's representation to the Court on November 19, 2020, the Facebook posting from May 10, 2015 (Bates-stamped D000078, DE #39-2 at ECF p. 4, and D000083, DE #39-2 at ECF p. 9) bears the Facebook globe icon 🌐, which signifies unequivocally that it is open to the public.  See Facebook Help Center, What does the little globe in the topic mean?, https://www.facebook.com/help/community/question/?id=10156887820690642&answer_id=10156887897265642 (visited March 4, 2021) ("The globe you are seeing is to show that a post is public on Facebook."); Facebook Help Center, What audiences can I choose from when I share on Facebook?, https://www.facebook.com/help/211513702214269?helpref=faq_content (visited March 4, 2021) ("🌐 Public: When you share something with Public that means anyone including people off of Facebook can see it.").[4]

Plaintiff further claims that Mr. McQueen accessed two "private" images from plaintiff's Facebook account.  See Owens Aff. ¶ 15 (identifying Bates-stamped D000090).  However, both these postings also reflect the Facebook globe icon.[5]

---

[4] One posting that Ms. Ziegler Moore emailed to Human Resources (Bates-stamped D000080, DE #39-2 at ECF p. 6) bears no indicia as to its privacy setting.  It appears that that Facebook posting may have been a continuation of the Facebook posting captured on the immediately preceding page in defendants' document production, i.e., Bates-stamped D000079, which is from the Facebook page of Mr. Johnson and includes the Facebook globe.  Regardless, as discussed above, plaintiff has not stated a claim against defendants for Ms. Ziegler Moore's conduct.  In addition, plaintiff cannot plausibly contend that Ms. Ziegler Moore somehow hacked into plaintiff's Facebook account to obtain that photo when she possessed other publicly available photos identifying plaintiff's son and his relation to Mr. Johnson.  See DE #39-2 at ECF pp. 2-5.

[5] Plaintiff incorrectly states in her affidavit that the "my dream pastry shop" post was made on March 11, 2015 (Owens Aff. ¶ 15); the date of the post is November 25, 2016 (DE #39-2 at ECF p. 16).  As for the other

13

"[A] self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence." BanxCorp v. Costco Wholesale Corp., 978 F.Supp.2d 280, 299 (S.D.N.Y. 2013) (internal quotation marks omitted); see Dzanoucakis v. Chase Manhattan Bank, USA, No. 06-CV-5673 (JFB)(ARL), 2009 WL 910691, at *8 (E.D.N.Y. Mar. 31, 2009) (Bianco, J.) (where the "uncontroverted record clearly supports a [particular] finding," then "[p]laintiff's own self-serving declaration to the contrary is insufficient, under the circumstances, to raise a triable issue of fact"); Lee Loi Indus., Inc. v. Impact Brokerage Corp., 473 F.Supp.2d 566, 570 (S.D.N.Y. 2007) ("While the Court may not assess credibility on summary judgment, if the evidence is contradictory or implausible, it may be disregarded."). Plaintiff has not proffered any evidence beyond her own self-serving affidavit that defendants intentionally accessed her private Facebook posts without authorization. Plaintiff's theory that defendants accessed her "private" posts is based purely on her claimed belief that her privacy settings were configured so as to limit access to her "Friends." See Owens Aff. ¶ 11. The screenshots plaintiff submitted reflecting her Facebook privacy settings as of November 24, 2020, are not probative of her account's security settings in September 2019. See DE #39-3. The Court need not consider plaintiff's affidavit where it is clearly

---

"private" posting allegedly accessed by Mr. McQueen, plaintiff describes it as having been made on November 26, 2016 and referencing her son giving up his seat to a woman in a doctor's waiting room. See Owens Aff. ¶ 15. In the exhibit submitted by plaintiff, the post, which appears on Bates-stamped D000090, is cut off at the top, thereby omitting the date and the privacy setting for that post. See DE #39-2 at ECF p. 16. However, defendants contemporaneously copied the Court on their supplemental December 21, 2020 production: The same page was also produced by defendants as Bates-stamped D000160; on that copy of the post, it is clear that the Facebook globe icon appears next to the date of November 26, 2016, demonstrating that the post was publicly available. See Letter to the Court dated 12/21/20 attaching supplemental document production (docketed on Mar. 9, 2021), DE #43 at ECF p. 11.

14

contradicted by the documentary evidence on which she relies in support of her motion.  See Connolly v. City of New York, No. 16-CV-465 (WFK), 2020 WL 5553843, at *10 n.2 (E.D.N.Y. Aug. 18, 2020) (in granting summary judgment, rejecting portion of plaintiff's affidavit that was "contradicted by the documentary evidence"), appeal filed, No. 20-3125 (2d Cir. Sept. 15, 2020).  In contrast, Mr. McQueen avers in his affidavit that he accessed only publicly available images and posts from plaintiff's Facebook page.  See Declaration of Dewayne McQueen (Jan. 22, 2021) ¶¶ 9, 10, DE #42-1; see id. ¶¶ 11-14.  Likewise, Ms. Ziegler Moore also testified that the images she anonymously sent to Human Resources were publicly available.  See DE #34-1 at 23-25, 54.  That evidence remains unrebutted.

Under the circumstances, plaintiff's proposed SCA claim not only is untimely, but would be futile, since it could not survive a motion to dismiss or for summary judgment.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend is denied.

Any objections to this Memorandum and Order must be filed with the Honorable Eric R. Komitee on or before March 23, 2021.  Failure to file objections in a timely manner may waive a right to appeal this order.

**SO ORDERED.**

Dated:   Brooklyn, New York
         March 9, 2021

                                    /s/ *Roanne L. Mann*
                                    **ROANNE L. MANN**
                                    **UNITED STATES MAGISTRATE JUDGE**

15